# IN THE UNITED STATES DISTRICT COURT FOR THE
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| MARK MCCOOL, SHAWN MACDONALD, AND WARREN HARLAN, individually and on behalf of all others similarly situated, | ) ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) ) |
| AHS MANAGEMENT COMPANY, INC., et al., | ) ) ) |
| Defendants. | ) ) |

NO. 3:19-cv-01158

JUDGE CAMPBELL
MAGISTRATE JUDGE FRENSLEY

## MEMORANDUM

Pending before the Court is Defendants' Motion to Dismiss (Doc. No. 34). Plaintiffs filed a Response in Opposition (Doc. No. 46), and Defendants filed a Reply (Doc. No. 52).

On June 19, 2020, Defendants filed a Notice of Supplemental Authority in support of their Motion to Dismiss (Doc. No. 53), and Plaintiffs filed a Response (Doc. No. 54). On July 6, 2020, Defendants filed a Notice of Supplemental Authority (Doc. No. 58), and Plaintiffs filed a Response and their own Notice of Supplemental Authority (Doc. No. 59), which Defendants responded to (Doc. No. 60). On August 3, 2020, Plaintiffs filed a Notice of Supplemental Authority (Doc. No. 62), and Defendants filed a Response (Doc. No. 64). On October 13, 2020, Defendants filed a Notice of Supplemental Authority (Doc. No. 67), and Plaintiffs filed a Response (Doc. No. 68). On November 2, 2020, and November 6, 2020, Plaintiffs file Notices of Supplemental Authority (Doc. Nos. 69, 70), and Defendants filed a Response (Doc. No. 72). On December 9, 2020, Defendants filed a Notice of Supplemental Authority (Doc. No. 73), and Plaintiffs filed a Response (Doc. No. 74). On January 4, 2021, and January 5, 2021, Plaintiffs filed Notices of Supplemental

Authority (Doc. Nos. 81, 82), and Defendants filed a Response and their own Notice of Supplemental Authority (Doc. No. 85), which Plaintiffs responded to (Doc. No. 86).

For the reasons set forth more fully below, Defendants' Motion will be **GRANTED** in part and **DENIED** in part.

## I.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This case arises from allegations that the Ardent Health Services Retirement Savings Plan (the "Plan") has not been managed with loyalty or prudence, in violation of the Employee Retirement Income Security Act ("ERISA"). Plaintiffs, individually and on behalf of a purported class, brought this action under 29 U.S.C. § 1132(a)(2), for breach of fiduciary duties by Defendants with regard to the Plan. The named Plaintiffs are participants in the Plan, and the Defendants are all alleged to be fiduciaries of the Plan.

The Plan is a defined contribution, individual account, employee benefit plan under ERISA. (Doc. No. 22 ¶ 39). The Amended Complaint alleges that, at the end of the plan year 2018, the Plan had a total of 28,074 participants or beneficiaries and $777,862,319 in assets. (Doc. No. 22 ¶¶ 50, 52). Plaintiffs contend that Defendants violated ERISA by breaching their fiduciary duties by imprudently selecting and monitoring Plan investments and recordkeeping fees (Count I) and by failing to monitor other fiduciaries (Count II). On March 26, 2020, Defendants moved to dismiss the First Amended Complaint under Rule 12(b)(1) for Plaintiffs' lack of Article III standing and Rule 12(b)(6) for failure to state a claim. (Doc. No. 34). Through their pending motion, Defendants also ask the Court to strike Plaintiffs' jury demand. (Doc. No. 35 at 30-35).

## II. STANDARDS OF REVIEW

### A. Rule 12(b)(1)

A motion to dismiss for lack of standing is properly characterized as a motion to dismiss for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). *See Forest City Residential Mgmt., Inc. ex rel. Plymouth Square Ltd. Dividend Hous. Ass'n v. Beasley*, 71 F. Supp. 3d 715, 722–23 (E.D. Mich. 2014) (citing *Stalley v. Methodist Healthcare*, 517 F.3d 911, 916 (6th Cir. 2008)). "Rule 12(b)(1) motions to dismiss for lack of subject-matter jurisdiction generally come in two varieties: a facial attack or a factual attack." *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007). When a Rule 12(b)(1) motion contests jurisdiction factually, the court must weigh the evidence in order to determine whether it has the power to hear the case, without presuming the challenged allegations in the complaint to be true. *Id.*; *DLX, Inc. v. Kentucky*, 381 F.3d 511, 516 (6th Cir. 2004). When the facts are disputed in this way, "[t]he district court has broad discretion to consider affidavits, documents outside the complaint, and to even conduct a limited evidentiary hearing if necessary," without converting the motion into one for summary judgment. *Cooley v. United States*, 791 F. Supp. 1294, 1298 (E.D. Tenn. 1992), aff'd sub nom. *Myers v. United States*, 17 F.3d 890 (6th Cir. 1994); *see also Gentek*, 491 F.3d at 330. It is then the plaintiff's burden to show that jurisdiction is appropriate. *DLX*, 381 F.3d at 511.

However, if a Rule 12(b)(1) motion challenges subject matter jurisdiction based on the face of the complaint, as this one does, the plaintiff's burden is "not onerous." *Musson Theatrical Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1248 (6th Cir. 1996). A court evaluating this sort of facial attack to the assertion of subject matter jurisdiction must consider the allegations of fact in the

3

complaint to be true and evaluate jurisdiction accordingly. *Gentek*, 491 F.3d at 330; *Jones v. City of Lakeland*, 175 F.3d 410, 413 (6th Cir. 1999).

**B. Rule 12(b)(6)**

Federal Rule of Civil Procedure 12(b)(6), permits dismissal of a complaint for failure to state a claim upon which relief can be granted. For purposes of a motion to dismiss, a court must take all of the factual allegations in the complaint as true. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual allegations, accepted as true, to state a claim for relief that is plausible on its face. *Id*. at 678. A claim has facial plausibility when the plaintiff pleads facts that allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. In reviewing a motion to dismiss, the Court construes the complaint in the light most favorable to the plaintiff, accepts its allegations as true, and draws all reasonable inferences in favor of the plaintiff. *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). Thus, dismissal is appropriate only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Guzman v. U.S. Dep't of Children's Servs.*, 679 F.3d 425, 429 (6th Cir. 2012).

**C. Rule 39(a)**

Federal Rule of Civil Procedure 39(a) stipulates that if a jury trial is demanded, it must be provided unless "the court, on motion or on its own, finds that on some or all of those issues there is no federal right to a jury trial." Fed. R. Civ. P. 39(a)(2). The court, in determining whether a party is entitled to a jury trial, should apply a two-part test consisting of "(1) a historical determination, which considers whether the modern statutory cause of action most nearly resembles historical actions in law or equity, and (2) an examination of the nature of the relief sought." *Bittinger v. Tecumseh Prods. Co.*, 123 F.3d 877, 882-83 (6th Cir. 1997); *see Golden v.*

4

*Kelsey-Hayes Co.*, 73 F.3d 648, 659 (6th Cir. 1996) ("[t]he second inquiry [regarding the nature of relief sought] is more important").

### III. ANALYSIS

**A. Standing**

Article III of the Constitution gives the federal courts jurisdiction only over "cases and controversies," of which the component of standing is an "essential and unchanging part." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). To establish Article III standing at the pleading stage, a plaintiff must allege facts plausibly demonstrating that: (1) he has suffered an "injury in fact"; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by the relief requested. *Gaylor v. Hamilton Crossing CMBS*, 582 F. App'x 576, 579–80 (6th Cir. 2014) (citing *Lujan*, 504 U.S. at 560–61). Plaintiffs with claims arising under ERISA are not absolved from showing that the elements of Article III standing are met.[1] *Soehnlen v. Fleet Owners Ins. Fund*, 844 F.3d, 581 (6th Cir. 2016). In order to claim the interests of others to establish Article III standing, "the litigants themselves still must have suffered an injury in fact, thus giving them a sufficiently concrete interest in the outcome of the issue in dispute." *Thole v. U. S. Bank N.A*, 140 S. Ct. 1615, 1620 (2020) (quoting *Hollingsworth v. Perry*, 570 U.S. 693, 708 (2013)) (internal quotation marks omitted).

Defendants argue that Plaintiffs lack standing to assert claims related to funds in which they did not invest. (Doc. No. 35 at 14). Specifically, Defendants contend that Plaintiffs cannot show injury-in-fact as a result of the alleged misconduct related to funds in which they did not invest because the "value of their individual accounts" could not have been "impaired" by any

---

[1] Plaintiffs must also have statutory standing to bring a claim under ERISA. 29 U.S.C. § 1132(a)(2). Because Plaintiffs are participants and/or beneficiaries under the Plan, they meet that test.

5

alleged underperformance of funds in which they did not invest. "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016) (quoting *Lujan*, 504 U.S. at 560). For an injury to be "particularized," it must affect the plaintiff in a personal and individualized way. *Soehnlen v. Fleet Owners Ins. Fund*, 844 F.3d 581 (6th Cir. 2016) For an injury to be "concrete," the injury must actually exist. *Id*. at 582.

Courts have recognized that a plaintiff who is injured in his or her own plan assets - and thus has Article III standing - may proceed under Section 1132(a)(2) on behalf of the plan or other participants even if the relief sought sweeps beyond his own injury. *See Cassell v. Vanderbilt Univ.*, No. 3:16-CV-2086, 2018 WL 5264640, at *3 (M.D. Tenn. Oct. 23, 2018) (citing *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 423 (6th Cir. 1998) (disagreeing with determination that plaintiff could not represent a class of participants invested in plans other than his own); *Clark v. Duke Univ.*, 2018 WL 1801946 at * 4 (M.D. N.C. Apr. 13, 2018); *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 593 (8th Cir. 2009) (plaintiff may seek relief under Section 1132(a)(2) "that sweeps beyond his own injury")). Section 1132(a)(2) does not provide a remedy for individual injuries distinct from plan injuries. *LaRue v. DeWolff, Boberg & Assocs., Inc.*, 552 U.S. 248, 256 (2008). A plaintiff who brings suit under Section 1132(a)(2) for breach of fiduciary duty does so in order to seek recovery on behalf of the plan. *Soehnlen v. Fleet Owners Ins. Fund*, 844 F.3d, 584 (6th Cir. 2016); *Loren v. Blue Cross & Blue Shield of Mich.*, 505 F.3d 598, 608 (6th Cir. 2007) ("Plaintiffs cannot bring suit under § 1132(a)(2) to recover personal damages for misconduct, but rather must seek recovery on behalf of the plan.").

Plaintiffs allege that Defendants failed independently to evaluate investment options and adequately to monitor those investments, resulting in injuries to the Plan. To the extent this allegedly imprudent practice of Defendants resulted in investment in allegedly imprudent funds, participants in those funds were injured. Plaintiffs challenge the practice by which investments were chosen and monitored. Plaintiffs have satisfied the requirements of Article III because they have alleged actual injury to their own Plan accounts, fairly traceable to Defendants' conduct, a causal connection between Defendants' actions and Plaintiffs' losses, and the likelihood that their injuries will be redressed by a favorable judgment. *See Cassell v. Vanderbilt Univ.*, No. 3:16-CV-2086, 2018 WL 5264640, at *4 (M.D. Tenn. Oct. 23, 2018). Additionally, Plaintiffs' allegations concerning record-keeping fees challenge the practices of Defendants, not specific funds. Plaintiff assert, for example, that Defendants failed to adequately monitor revenue sharing. These are allegations of an imprudent process that allegedly injured all Plan participants, including Plaintiffs, when a portion of those fees were charged to individual accounts. Plaintiffs have standing to bring these claims related to record-keeping fees. *See id*. at *3. Accordingly, the Court will deny Defendants' motion to dismiss for lack of standing.

**B. ERISA**

ERISA governs employee benefit plans and establishes both the obligations of plan fiduciaries and the remedies for any breaches of their duties. *Tullis v. UMB Bank*, 515 F.3d 673, 676 (6th Cir. 2008). It is a comprehensive statute designed to promote the interests of employees and their beneficiaries in employee benefit plans. *Cassell v. Vanderbilt Univ.*, 285 F. Supp. 3d 1056, 1061 (M.D. Tenn. 2018) (citing *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 425 (6th Cir. 2002)). The statute accomplishes this purpose by imposing fiduciary duties of prudence and loyalty on plan fiduciaries. *Id*. Any person who is a fiduciary with respect to a plan who breaches any of

7

the responsibilities, obligations or duties imposed upon them under ERISA "shall be personally liable to make good to such plan any losses to the plan resulting from each such breach" and for such other equitable remedial relief as the court deems appropriate. 29 U.S.C. § 1109(a).

1. Fiduciary Duty of Loyalty

Under ERISA's duty of loyalty, a fiduciary "shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries" and for the exclusive purpose of: (1) providing benefits to participants and their beneficiaries; and (2) defraying reasonable expenses of administering the plan. 29 U.S.C. § 1104(a)(1)(A). "To state a loyalty-based claim under ERISA, a plaintiff must do more than simply recast purported breaches of the duty of prudence as disloyal acts." *Cassell*, 285 F. Supp. 3d at 1062. "[T]o implicate the concept of loyalty, a plaintiff must allege plausible facts supporting an inference that a fiduciary acted *for the purpose of* providing benefits to itself or some third party." *Id*. (emphasis in original).

In the present case, the Court finds that Plaintiffs have not alleged sufficient facts to show that Defendants engaged in transactions involving self-dealing or that otherwise involved or created a conflict between Defendants' fiduciary duties and personal interests. Even though Plaintiffs allege that Transamerica benefitted from Defendants' alleged mismanagement, the Amended Complaint fails to allege plausible facts supporting an inference that Defendants *acted for the purpose* of providing benefits to Transamerica, any other third party, or to themselves. Even if those third parties are considered "parties of interest," as defined in ERISA, in order to show that Defendants breached the fiduciary duty of loyalty, Plaintiffs must sufficiently allege that Defendants acted for the purpose of benefitting those third parties or themselves. When claims do not support an inference that the defendants' actions were for the purpose of providing benefits to themselves or someone else and simply had that incidental effect, loyalty claims should be

8

dismissed. *See Cassell v. Vanderbilt Univ.*, 285 F. Supp. 3d 1056, 1062 (M.D. Tenn. 2018) (citing *Sacerdote v. New York Univ.*, No. 16-CV-6284 (KBF), 2017 WL 3701482, at *6 (S.D.N.Y. Aug. 25, 2017) ("an act which has the effect of furthering the interests of a third party is fundamentally different from an act taken with that as a goal.")).

Considering the Amended Complaint as a whole, the claims allege that Defendants followed an imprudent process, not that they acted disloyally. The facts alleged in the Amended Complaint assert that Defendants failed to manage and make decisions for the Plan in a prudent manner, not that Defendants engaged in self-dealing or acted for the purpose of benefitting a third party. Plaintiffs argue that Defendants selected high-cost investments with revenue sharing in order use a portion of the fees to pay Transamerica its inflated fees support a strong inference that Defendants' actions were taken to save itself costs at the expense of Plan participants, and/or to favor its recordkeepers over the Plan participants. (Doc. No. 46 at 30). However, Plaintiffs do not sufficiently allege that Defendants acted for the purpose of furthering Transamerica's interests. *See, e.g.*, *Cassell*, 285 F. Supp. 3d at 1062–63. Accordingly, Defendants' Motion to Dismiss will be granted as to Plaintiffs' claims for breach of the duty of loyalty.

2. Fiduciary Duty of Prudence

Under ERISA's duty of prudence, a fiduciary is required to discharge his duties "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(B). "The test for determining whether a fiduciary has satisfied his duty of prudence is whether the fiduciary, at the time he engaged in the challenged transactions, employed the appropriate methods to investigate the merits of the investment and to structure the investment." *Cassell*, 285 F. Supp. 3d at 1061 (citing *Pfeil*

9

*v. State Street Bank and Trust Co.*, 806 F.3d 377, 384 (6th Cir. 2015)). The Court must focus on whether the fiduciary engaged in a reasonable decision-making process, consistent with that of a prudent person acting in a like capacity. *See id*. Because the content of the duty of prudence turns on the circumstances prevailing at the time the fiduciary acts, the appropriate inquiry will necessarily be context specific. *Id*. (citing *Pfeil*, 806 F.3d at 385).

    *a. Count I*

Count I alleges that Defendants breached their fiduciary duties by imprudently selecting and monitoring Plan investments and recordkeeping fees. As an initial matter, the Court notes that "[t]he question whether it was imprudent to pay a particular amount of record-keeping fees generally involves questions of fact that cannot be resolved on a motion to dismiss." *Cassell v. Vanderbilt Univ.*, 285 F. Supp. 3d 1056, 1064 (M.D. Tenn. 2018) (citing *White v. Chevron*, 2016 WL 4502808 at *14 (N.D. Cal. Aug. 29, 2016)). Similarly, "[w]hether fees are unreasonable is an issue that should be taken up at summary judgment." *Id*. at 1066 ("The reasonableness of fees is a defense and does not have to be pleaded by the Plaintiffs."). Moreover, at the motion to dismiss stage, it is not Plaintiffs' burden to rule out every possible lawful explanation for the allegedly high fees charged in administering the Plan. *Id*. (citing *Pledger v. Reliance Tr. Co.*, 240 F. Supp. 3d 1314, 1329 (N.D. Ga. 2017)). Here, Plaintiffs allege that Defendants not only failed to monitor or control the record-keeping fees, but also that Defendants' investment selection and monitoring processes were imprudent. Plaintiffs allege that the Plan failed to switch to identical lower-fee share class mutual funds, maintained expensive actively managed mutual funds, and failed to make any significant changes to the funds for the entire class period. (Doc. No. 22 ¶¶ 103, 107-110, 121-123).

10

Case 3:19-cv-01158   Document 88   Filed 03/04/21   Page 10 of 13 PageID #: 1075

"Nothing in ERISA requires every fiduciary to scour the market to find and offer the cheapest possible fund, which might, of course, be plagued by other problems." *Cassell*, 285 F. Supp. 3d at 1066 (citation omitted). "In addition, nothing in ERISA requires plan fiduciaries to include any particular mix of investment vehicles in their plan." *Id*. (citing *In re Honda of America Mfg., Inc. ERISA Fees Litigation*, 661 F.Supp.2d 861, 866 (S.D. Ohio 2009)). "Nonetheless, a fiduciary normally has a continuing duty of some kind to monitor investments and remove imprudent ones." *Id*. (citing *Stargel v. SunTrust Banks, Inc.*, 791 F.3d 1309, 1311 (11th Cir. 2015) (citing *Tibble v. Edison Int'l*, 575 U.S. 523 (2015)).

The allegations in this count all require examination of particular circumstances, specific decisions and the context of those decisions. *See Cassell*, 285 F. Supp. 3d at 1067. There are numerous factors that a prudent fiduciary must consider besides the amount of the fees. As noted by Defendants, numerous courts have recognized that fiduciaries have latitude to value investment features other than price (and, indeed, are required to do so). (*See* Doc. No. 35 at 18); *see White v. Chevron Corp.*, No. 16-CV-0793-PJH, 2016 WL 4502808, at *10 (N.D. Cal. Aug. 29, 2016) (collecting cases). Accordingly, the appropriate inquiry on these claims involves issues of fact, which cannot be determined on a motion to dismiss. These issues are better suited for summary judgment, when discovery is complete and the record is more developed. *See Cassell*, 285 F. Supp. 3d at 1067.

*b. Count II*

Count II alleges that the Board of Directors failed to monitor the performance of the Committee Defendants or have a system in place for doing so, failed to take action as the Plan suffered significant losses as a result of the Committee Defendants' imprudent actions and omissions, failed to monitor the processes by which Plan investments were evaluated, and failed

11

to remove Committee members who continued to maintain imprudent investments fees. (Doc. No. 22 ¶¶ 147-150). An appointing fiduciary has an ongoing fiduciary duty to monitor its fiduciary appointees. *See In re Ferro Corp. ERISA Litig.*, 422 F. Supp. 2d 850, 863 (N.D. Ohio 2006). Plaintiffs' allegation that the Board of Directors failed to take any action to monitor the Committee Defendants is sufficient to state a claim for breach of the duty to monitor under a notice pleading standard. *See In re Polaroid ERISA Litig.*, 362 F.Supp.2d 461, 477 (S.D.N.Y. 2005) (allegation that fiduciary failed to take any steps to monitor appointees stated claim for breach of fiduciary duty). Accordingly, Defendant's Motion to Dismiss the claims against the Board of Directors will be denied.

## C. Jury Demand

Defendants argue that other courts have agreed that ERISA breach of fiduciary duty claims are equitable and therefore that there is no right to a jury trial. (Doc. No. 35 at 30-32). Relying on out-of-circuit authority, Plaintiffs argue that there had been a recent gradual acceptance that a jury trial may be appropriate in ERISA cases. (Doc. No. 46 at 32-33).

The United States Court of Appeals for the Sixth Circuit has consistently held that ERISA claims are equitable in nature and thus not eligible for a jury trial. *See Jammal v. Am. Family Ins. Co.*, 914 F.3d 449, 452 n.1 (6th Cir. 2019) (noting that "Plaintiffs seeking relief under ERISA generally have no right to have their claims decided by a jury."); *see, e.g., Wilkins v. Baptist Healthcare Sys.*, 150 F.3d 609, 616 (6th Cir. 1998) (holding that an ERISA claim is equitable in nature and thus not eligible for a jury trial); *Bair v. Gen. Motors Corp.*, 895 F.2d 1094, 1096–97 (6th Cir. 1990) (same). Accordingly, Plaintiffs cannot rely on ERISA to support their request for a jury trial, and any right to trial by jury must arise under the Seventh Amendment. *See Howard v. Prudential Ins. Co. of Am.*, 248 F. Supp. 3d 862, 868 (W.D. Ky. 2017). The Sixth Circuit, however,

12

has determined that "the Seventh Amendment does not guarantee a jury trial in ERISA ... cases." *Id.* (quoting *Reese v. CNH Am. LLC*, 574 F.3d 315, 327 (6th Cir. 2009)). As such, Defendants' motion will be granted as to their request to strike Plaintiffs' jury demand.

An appropriate order will enter.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE