# IN THE UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| **MARK MCCOOL, SHAWN MACDONALD, AND WARREN HARLAN, individually and on behalf of all others similarly situated,** | ) ) ) ) ) | |
| **Plaintiffs,** | ) ) | **NO. 3:19-cv-01158** |
| **v.** | ) ) ) | **JUDGE CAMPBELL** <br> **MAGISTRATE JUDGE FRENSLEY** |
| **AHS MANAGEMENT COMPANY, INC., et al.,** | ) ) ) | |
| **Defendants.** | ) ) | |

## MEMORANDUM

Pending before the Court is Defendants' Motion for Summary Judgment. (Doc. No. 101). Plaintiffs filed a response in opposition (Doc. No. 108), and Defendants filed a Reply (Doc. No. 115). Also pending before the Court are the parties' notices of supplemental authority. (Doc. Nos. 116-120, 124, 126-128). Because Defendants have failed to demonstrate the absence of material disputes of fact, their motion for summary judgment will be **DENIED**.

The allegations underlying this litigation are set forth in detail in this Court's prior Memorandum concerning Defendants' motion to dismiss. *See McCool v. AHS Mgmt. Co., Inc.*, No. 3:19-CV-01158, 2021 WL 826756 (M.D. Tenn. Mar. 4, 2021). The case arises under the Employee Retirement Income Security Act ("ERISA") and alleges breach of fiduciary duties by Defendants in relation to the Ardent Health Services Retirement Savings Plan (the "Plan"). Plaintiffs brought the action, pursuant to 29 U.S.C. § 1132(a)(2), on behalf of the Plan. The remaining claims are breach of fiduciary duties concerning selecting and monitoring Plan investments and recordkeeping fees (Count I) and failing to monitor other fiduciaries (Count II).

# I.  STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The party bringing the summary judgment motion has the initial burden of informing the Court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Rodgers v. Banks,* 344 F.3d 587, 595 (6th Cir. 2003). The moving party may satisfy this burden by presenting affirmative evidence that negates an element of the non-moving party's claim or by demonstrating an absence of evidence to support the nonmoving party's case. *Id.*

In evaluating a motion for summary judgment, the court views the facts in the light most favorable for the nonmoving party, and draws all reasonable inferences in favor of the nonmoving party. *Bible Believers v. Wayne Cty., Mich.*, 805 F.3d 228, 242 (6th Cir. 2015); *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003).  The Court does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  Rather, the Court determines whether sufficient evidence has been presented to make the issue of material fact a proper jury question. *Id.* The mere scintilla of evidence in support of the nonmoving party's position is insufficient to survive summary judgment; instead, there must be evidence of which the jury could reasonably find for the nonmoving party. *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003).

# II.  ANALYSIS

Plaintiffs claim Defendants violated ERISA by imprudently selecting and monitoring Plan investments and recordkeeping fees (Count I) and by failing to monitor other fiduciaries (Count II).  Defendants have moved for summary judgment on Plaintiffs' claims in Count I on the basis

2

that Plaintiffs cannot raise a triable issue of fact as to whether Defendants breached their duty of prudence by (1) failing to appropriately monitor the Plan investments and (2) failing to appropriately monitor the recordkeeping fees charged to the Plan. (*See* Doc. No. 102 at 14-27).

Under ERISA, the duties owed by fiduciaries to plan participants and beneficiaries "are those of trustees of an express trust – the highest known to the law." *Donovan v. Bierwirth*, 680 F.2d 263, 271-72 n.8 (2d Cir. 1982). "ERISA plan fiduciaries must discharge their duties 'with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.'" *Hughes v. Nw. Univ.*, 211 L. Ed. 2d 558, 142 S. Ct. 737, 739 (2022) (quoting 29 U.S.C. § 1104(a)(1)(B)).

"In assessing the prudence of a plan administrator's decision-making process, context often is destiny." *Forman v. TriHealth, Inc.*, 40 F.4th 443, 448 (6th Cir. 2022). "The test for determining whether a fiduciary has satisfied [their] duty of prudence is whether the fiduciary, at the time he engaged in the challenged transactions, employed the appropriate methods to investigate the merits of the investment and to structure the investment." *Cassell v. Vanderbilt Univ.*, 285 F. Supp. 3d 1056, 1061 (M.D. Tenn. 2018) (citing *Pfeil v. State Street Bank and Trust Co.*, 806 F.3d 377, 384 (6th Cir. 2015)); *see also Donovan v. Cunningham*, 716 F.2d 1455, 1467 (5th Cir. 1983) ("this is not a search for subjective good faith—a pure heart and an empty head are not enough.").

An ERISA fiduciary has an ongoing "duty to monitor trust investments and remove imprudent ones" and must review investments at "regular intervals." *Tibble v. Edison Int'l*, 575 U.S. 523, 529 (2015) ("This continuing duty exists separate and apart from the trustee's duty to exercise prudence in selecting investments at the outset."); *see, e.g.*, *Forman*, 40 F.4th at 448

("Derived from the law of trusts, the duty of prudence requires plan administrators to select initial investment options with care, to monitor plan investments, and to remove imprudent ones.").

ERISA's fiduciary duty of prudence also imposes the obligation to review recordkeeping fees for reasonableness. *See George v. Kraft Foods Glob., Inc.*, 641 F.3d 786, 799 (7th Cir. 2011) ("Although the fact that defendants engaged consultants and relied on their advice with respect to [recordkeeper]'s fee is certainly evidence of prudence, it is not sufficient to entitle defendants to judgment as a matter of law."). An ERISA fiduciary has the responsibility to ensure that fees paid to recordkeepers are not excessive relative to services rendered. *See Smith v. CommonSpirit Health*, 37 F.4th 1160, 1169 (6th Cir. 2022) (citing *Young v. Gen. Motors Inv. Mgmt. Corp.*, 325 F. App'x 31, 33 (2d Cir. 2009)).

### A. Investment Options Claims

According to Defendants, the Committee's process for monitoring existing investments was to meet on a quarterly basis and review reports prepared by SageView Advisory Group, LLC ("SageView"). (Doc. No. 103 ¶ 19).[1] Defendants also note that, in May 2012, the Committee adopted a three-page written investment policy "to assist … in selecting, monitoring and evaluating investment alternatives made available to participants and beneficiaries under the Plan." (Doc. No. 104-51). Additionally, Defendants produce an investment policy statement that the Committee adopted in August 2018. (Doc. No. 104-52).

The foregoing evidence does not demonstrate an absence of evidence to support Plaintiffs' claims, as required to shift the burden to Plaintiffs as the nonmoving party. *See Rodgers v. Banks,* 344 F.3d 587, 595 (6th Cir. 2003) (moving party may satisfy its burden of demonstrating that there

---

[1] At all relevant times, SageView has provided investment advice and other Plan-related services to the Plan. (Doc. No. 114 ¶ 83). Defendants only produced minutes from some of the Committee's meetings during the class period. (*See* Doc. Nos. 104-1 – 104-17).

4

is no genuine dispute as to any material fact by presenting affirmative evidence that negates an element of the non-moving party's claim or by demonstrating an absence of evidence to support the nonmoving party's case.). Nevertheless, in their response, Plaintiffs identify deposition testimony from Committee members that the Committee relied exclusively on SageView for evaluating investment options without checking or questioning SageView's work. (*See* Doc. No. 109 ¶ 19; Doc. No. 114 ¶ 152). Committee members also testified that they did not always receive materials in advance of the quarterly meetings or that they would be received less than twenty-four hours in advance. (Doc. No. 109 ¶ 24). Additionally, Plaintiffs point to their expert proof as to why the investment options were imprudent. (*See* Doc. Nos. 109 ¶¶ 75-77; Doc. No. 114 ¶ 145).

Viewing the evidence in the record in the light most favorable to Plaintiffs, genuine issues of material fact – including but not limited to factual questions about Defendants' conduct and involvement in monitoring the Plan's investments and whether the investment options were imprudent – preclude summary judgment on the investment options claims.

## B. Recordkeeping Fees Claims

According to Defendants, the Committee's process for monitoring recordkeeping fees consisted of reviewing benchmarking reports in 2016, 2017, and 2018, and deciding in 2018 to conduct a request for proposals for recordkeeping services. (*See* Doc. No. 102 at 24-25 (citing Doc. No. 103 ¶¶ 50, 54)).[2] The foregoing evidence does not demonstrate an absence of evidence

---

[2]     Defendants contend that the Committee re-evaluated the Plan's recordkeeping fees in 2015, (Doc. No. 103 ¶ 49); however, neither the Committee minutes, (Doc. No. 104-5), nor the cited Committee member deposition transcript, (Doc. No. 104-65 at PageID # 2514-2515), support the proposition that "the Committee evaluated the Plan's recordkeeping fee relative to the quality of Transamerica's services[.]" Rather, the Committee minutes indicate that Bob Trethewey of SageView informed the Committee that SageView was "supportive of the new relationship with Transamerica" because it had "several other clients who [were] pleased with the Transamerica administrative platform and service track record." (Doc. No. 104-5). Similarly, the Committee minutes indicate that Melanie Miller of SageView conducted the due diligence rather than "Ardent's human resources human resources personnel." (*See id*.).

to support Plaintiffs' claims. *See George v. Kraft Foods Glob., Inc.*, 641 F.3d 786, 799 (7th Cir. 2011) ("Although the fact that defendants engaged consultants and relied on their advice with respect to [recordkeeper]'s fee is certainly evidence of prudence, it is not sufficient to entitle defendants to judgment as a matter of law."). Indeed, genuine issues of material fact – including but not limited to factual questions about Defendants' conduct and involvement in monitoring the recordkeeping fees, whether the Committee's reliance on the benchmarking reports was reasonable, and whether the recordkeeping fees were reasonable – preclude summary judgment on the recordkeeping fees claim. On these points, Plaintiff identify deposition testimony from Committee members that they lacked familiarity with ERISA Section 408(b)(2) or its requirements. (*See* Doc. No. 109 ¶ 32). Plaintiffs note that the benchmarking reports that the Committee relied on each state: "This report is a tool to aid you in evaluating your plan and should not be the sole source of information you use to evaluate your plan." (*See id.* ¶¶ 51-53). Plaintiffs also point to their expert's opinions that the recordkeeping fees should have been $7 lower per participant, per year. (*See id.* ¶ 76). Viewing the evidence in the record in the light most favorable to Plaintiffs, a reasonable juror could find that the Committee's process for monitoring recordkeeping fees was imprudent.

\* \* \*

Defendants' failure to establish the absence of material disputes of fact as to Count I precludes summary judgment as to Plaintiffs' failure to monitor claims in Count II because these claims are entirely dependent on an underlying fiduciary duty breach.

An appropriate Order shall enter.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE

6